NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHIMON ASAF LUSKI, | |
| Plaintiff, | Civil Action No. 25-14657 (ZNQ) (TJB) |
| v. | OPINION |
| JUDGE MADELIN F. EINBINDER, *et al.*, | |
| Defendants. | |

QURAISHI, District Judge

THIS MATTER comes before the Court upon an application to proceed *in forma pauperis* ("IFP") (ECF No. 21) by *pro se* Plaintiff Shimon Asaf Luski ("Plaintiff").  Pursuant to 28 U.S.C. § 1915(e)(2), the Court will conduct a *sua sponte* screening of the Complaint ("Compl.", ECF No. 1).  Also before the Court is Plaintiff's Motion for Federal Protection (ECF No. 8), and Emergency Motion for Federal Intervention (ECF No. 26).  For the reasons set forth below, the Court will GRANT Plaintiff's IFP Application and DISMISS WITHOUT PREJUDICE Plaintiff's Complaint for lack of subject-matter jurisdiction.  Plaintiff's Motions will be DENIED AS MOOT.

I.      BACKGROUND AND PROCEDURAL HISTORY

The following facts are derived from Plaintiff's Complaint.[1]  As such, the facts asserted therein are accepted as true only for the purposes of screening the Complaint pursuant to 28 U.S.C. § 1915(e)(2).  Plaintiff filed a Complaint and an IFP application on August 12, 2025.  (ECF No 1.)

---

[1] Attached to Plaintiff's Complaint are scores of documents, state court orders, police reports, and declarations made by Plaintiff.  (*See generally* ECF Nos. 1-1 &1-2.)  The Court will consider these documents as part of Plaintiff's Complaint.

On November 3, 2025, Plaintiff filed a Motion for Federal Protection.  (ECF No. 8.)  The Court denied Plaintiff's IFP application without prejudice on December 9, 2025.  (ECF No. 20.)  Plaintiff filed a second IFP application on December 12, 2025.  (ECF No. 21.)  On April 22, 2026, Plaintiff filed an Emergency Motion for Immediate Federal Intervention.  (ECF No. 26.)

The Complaint is not a model of clarity.  As best the Court can discern and in the briefest terms, Plaintiff has been the subject of ongoing proceedings before the New Jersey Superior Court, Ocean County, Family Division.  Plaintiff has had multiple temporary and final restraining orders imposed against him for domestic relations incidents. (ECF No. 1-2 at 12–17, 29, 76–84.)  Plaintiff alleges that these restraining orders have been "weaponized" against him, "and used as [the] foundation for multiple arrests [and additional] restraining orders."  (Compl. at 3.)  For example, Plaintiff attests that he was arrested on August 25, 2024, spent forty-six days in jail, and upon conclusion of a trial conducted on January 30, 2025, he was sentenced to time served.  (ECF No. 1-1 at 5.)

Plaintiff is additionally on probation with monthly check-ins from probation officers, is in arrears of his child support payments, and faces ongoing enforcement collection actions to recoup the amount owed.  (Compl. at 3; ECF No. 1-2 at 65–66, 69–70; ECF No. 13 at 1.)  Plaintiff avers that his ongoing court-ordered probation and financial collections have been carried out under "unsigned or mismatched dockets, despite multiple hearings in which no judicial officer authorized any term of probation."  (*See, e.g.*, ECF No. 10 at 1.)  Plaintiff claims that his requests for signed court orders and other court documents caused him to experience retaliatory punishment, and that he was consistently misled by court staff about the implications of his restraining orders and the status of the proceedings against him.  (Compl. at 2.)

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against the following Defendants: (1) Hon. Madelin F. Einbinder, J.S.C. ("Judge Einbinder"), Hon. Vincent J. Grasso, J.S.C. ("Judge Grasso"), and Hon. Deborah Hanlon-Schron, J.S.C. ("Judge Hanlon-Schron"), (collectively the "Judges"); (2) Court Clerk "Jeanin" (the "Court Clerk"); (3) Kimberly Knapp, as Manager of Probation and Child Support, and Nancy Therman, as Manager of the Family Division (collectively, the "Managers"); (4) Probation Officers Scott and Hart (collectively, the "Probation Officers"); (5) Sara Litek ("Litek") and Jessica Desousa ("DeSousa"), as Child Support Agents (collectively, the "Child Support Agents"); (6) the New Jersey Superior Court, Ocean County, Family, Child Support, and Probation Divisions (the "New Jersey Superior Court, Ocean County"); (7) Laura Ben-Ishay[2] ("Ben-Ishay"); (8) Assistant Prosecutor Moscato; and (9) Detective Shadiak.[3] (*See generally id.*[4])

Plaintiff asserts the following causes of action: (1) violation of the procedural due process clause of the Fourteenth Amendment against the Judges, the Court Clerk, the Managers, Litek, the Probation Officers, and the New Jersey Superior Court, Ocean County ("Count One"); (2) double jeopardy and excessive punishment against Judges Einbinder and Grasso, the Probation Officers, and the New Jersey Superior Court, Ocean County ("Count Two"); (3) retaliation for protected speech and access to the courts against all Defendants ("Count Three"); (4) violation of the equal protection clause of the Fourteenth Amendment against Judges Grasso and Hanlon-Schron, the Managers, Litek, and Ben-Ishay ("Count Four"); (5) unlawful jail conditions and cruel punishment against the "Ocean County Jail System" and Judge Einbinder ("Count Five"); and (6) abuse of state power and color of law against all Defendants ("Count Six"). (*See generally id.*)

---

[2] Also named in the Complaint as: Laura J. Ben-Ishay, Ben-Ishay, and Laura Luski.
[3] Plaintiff does not provide full names for the Court Clerk, Assistant Prosecutor Moscato, or Detective Shadiak.
[4] The Court construes the claims against the Judges, the Court Clerk, the Managers, the Probation Officers, Assistant Prosecutor Moscato, and Detective Shadiak as brought against them in both their individual and official capacities.

3

Plaintiff seeks damages against the Defendants, in the aggregate of $25,000,000, as well as: (1) the "full expungement of all criminal, municipal, and probation records" associated with his case, "including any charges, arrests, restraining orders, or court findings" procured by unconstitutional or fraudulent means; (2) immediate termination of "all current enforcement actions based on manipulated hearings or improperly entered restraining orders"; (3) an order requiring "correction" of state or local databases to remove harmful legal information related to Plaintiff; and (4) a declaration that Plaintiff's constitutional rights were violated.  (ECF No. 1-1 at 21.)

## II.    <u>LEGAL STANDARD</u>

District courts must review IFP complaints and *sua sponte* dismiss any action that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B). "Whether a complaint should be dismissed under § 1915 because it fails to state a claim is assessed under the same standard as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *Rhodes v. Maryland Judiciary*, 546 F. App'x 91, 93 (3d Cir. 2013).

When evaluating the pleadings under a 12(b)(6) standard, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  Under 12(b)(6), a complaint survives if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  It is not for courts to decide at this point whether the plaintiff will succeed on the merits, but "whether the[ plaintiff] should be

afforded an opportunity to offer evidence in support of [his] claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Further, federal courts have a constant obligation to satisfy themselves of their subject-matter jurisdiction and to decide the issue *sua sponte*. *See Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995). Under Federal Rule of Civil Procedure 12(h)(3), a federal court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction."

## III.    DISCUSSION

### A.    *IN FORMA PAUPERIS* APPLICATION

Based on the information provided in Plaintiff's submissions, the Court finds that it is appropriate to permit him to proceed *in forma pauperis.* Plaintiff's IFP Application will therefore be GRANTED. Having granted Plaintiff's IFP Application, the Court will *sua sponte* screen the Complaint.

### B.    *SUA SPONTE* SCREENING

Upon review of Plaintiff's Complaint, the Court finds that it must be dismissed for several reasons. The Court discusses those reasons below.

#### 1.    *Rooker-Feldman* Doctrine

The Court lacks subject-matter jurisdiction over each of Plaintiff's § 1983 claims under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine proscribes federal district courts from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by

state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The principle undergirding *Rooker-Feldman* is simple: 28 U.S.C. § 1331 "is a grant of original jurisdiction[ ] and does not authorize district courts to exercise appellate jurisdiction over state-court judgments[.]" *Id.*, at 292 (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002)). As the United States Supreme Court recently stated, the principles of federalism are "best served by continuing to apply *Rooker-Feldman* to federal cases in which plaintiffs seek review of state-court judgments, regardless of whether those judgments are final trial-court judgments or those of a State's highest court." *T.M. v. Univ. of Maryland Med. Sys. Corp.*, Civ. No. 25-197, 608 U.S. ----, 2026 WL 1751823, at *9 (2026).

"The Third Circuit has consistently held that the *Rooker-Feldman* doctrine prohibits suits brought in federal court where, as here, Plaintiff challenges the judgments of state family courts." *Adamo v. Jones*, Civ. No. 15-1073, 2016 WL 356031, at *7 (D.N.J. Jan. 29, 2016) (internal citations omitted). For *Rooker-Feldman* to apply, the Third Circuit has enumerated four prerequisites that must be met: "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). All four requirements are present in this matter.

Here, a temporary restraining order ("TRO") was issued against Plaintiff in the Lakewood Township Municipal Court on July 28, 2022 for a *prima facie* act of domestic violence pursuant to the Prevention of Domestic Violence Act ("PDVA"), N.J. Stat. Ann. § 2C:25-17, *et seq.* (ECF No. 1-2 at 15.) Another TRO was issued against Plaintiff on December 1, 2022 by Judge Einbinder

pursuant to a *prima facie* act of domestic violence under the PDVA and a final hearing was scheduled for December 12, 2022. (*Id.* at 28.) An amended TRO was granted on January 20, 2023, and the final restraining order ("FRO") against Plaintiff was imposed pursuant to PDVA and has been amended several times throughout 2023 and 2024 regarding Plaintiff's visitation time with his children. (ECF No. 1-2 at 76.) Under the statutory scheme of the PDVA, violations of an order issued under the PDVA may result in contempt proceedings before the Family Part of the New Jersey Superior Court and may be enforced in a civil or criminal action. N.J. Stat. Ann. § 2C:25-31. A defendant to a contempt violation may be sentenced to probation, *id.* at -32.3, but any person convicted of a second domestic contempt offense shall be sentenced to a term of imprisonment for no less than thirty days. *Id.* at -31. Plaintiff has appeared to violate the terms of the FRO and his probation at least three times (*see* Compl. at 2; ECF 1-2 at 24), subjecting him to a forty-six-day stint in county jail. (ECF No. 1-1 at 5.)

For each of Plaintiff's constitutional claims, he alleges that restraining orders imposed against him have been either fabricated, altered, or manipulated, as part of a campaign to punish Plaintiff and deprive him of his constitutional rights under the First, Fifth, Eighth, and Fourteenth Amendments. (*See generally* Compl.) Plaintiff thus claims that the enforcement of these restraining orders has subjected him to unconstitutional arrests for false violations of those restraining orders, as well as an unconstitutional trial and resulting sentence. (*Id.*) The foregoing demonstrates that Plaintiff "lost" in state court insofar as the state court has entered an FRO, found that Plaintiff violated the terms of his probation on three separate occasions, and incarcerated Plaintiff for such violations. (*See generally* Compl.; ECF No. 1-1, 1-2.) Additionally, the harm Plaintiff seeks to remedy emanates from the entry and subsequent enforcement of the restraints imposed against Plaintiff. (Compl.) By asking this Court to expunge "all criminal, municipal, and

7

probation records" associated with Plaintiff, "including any charges, arrests, restraining orders, or court findings" procured by unconstitutional or fraudulent means and to immediately terminate "all current enforcement actions based on manipulated hearings or improperly entered restraining orders", Plaintiff necessarily invites this Court to exercise appellate review over the proceedings in the state court in an attempt to declare these adverse orders "unconstitutional, unenforceable, and void *ab initio.*" *T.M.*, 2026 WL 1751823, at *7 (citation omitted). Plaintiff's claims thus implicate the *Rooker-Feldman* doctrine as Plaintiff's success hinges upon this Court negating the state court's judgments against Plaintiff and otherwise preventing the state court from enforcing its FROs. *See Melleady v. Blake*, Civ. No. 11-1807, 2011 WL 6303245, at * (D.N.J. Dec. 15, 2011) (dismissing § 1983 suit under *Rooker-Feldman* because "[i]n order for this Court to grant any of the relief [the plaintiffs] seek, the Court would be required to review the decision of the New Jersey Family Court. Such a review would necessitate this Court passing judgment on the soundness and validity of the Family Court's actions, reasoning, and resolution of the underlying . . . proceedings.").

The Court accordingly lacks subject-matter jurisdiction over Plaintiff's claims for inviting appellate review of the state court's orders imposing restraints and conditions of probation upon him. *See T.M.*, 2026 WL 1751823, at *6 (explaining that *Rooker-Feldman* requires dismissal for want of subject-matter jurisdiction).

### 2.   *Younger* Abstention

Even if the Court were to possess subject-matter jurisdiction over the present suit, the Court finds that abstention under *Younger v. Harris*, 401 U.S. 37 (1971), is appropriate for Plaintiff's ongoing child support enforcement action and term of probation. *See Anthony v. Council*, 316 F.3d 412, 417 (3d Cir. 2003), *abrogated on other grounds by Gok v. United States*, Civ. No. 23-2150, 2024 WL 1597690, at *2 n.3 (3d Cir. Apr. 12, 2024) (applying *Younger* abstention to

action challenging state court orders on child support).  In order for a district court to abstain under *Younger*, exceptional circumstances must exist, such as: (1) ongoing state criminal prosecutions; (2) civil enforcement proceedings; and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions."  *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (internal quotations and citations omitted).  If exceptional circumstances exist, then three requirements must be met before a court abstains: (1) there must be ongoing state proceedings that are judicial in nature; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must provide an adequate opportunity to raise federal claims."  *Dixon v. Kuhn*, 257 F. App'x 553, 555 (3d Cir. 2007) (citing *Anthony*, 316 F.3d at 418).  Here, all the prerequisites to abstain are met.

First, Plaintiff indicates that he is subject to ongoing child support enforcement proceedings.  (*See generally* Compl.; *see also* ECF No. 19 at 1.)  Judicial proceedings concerning child support orders and obligations remain ongoing as "child support orders and the mechanisms for monitoring, enforcing and modifying them comprise a unique system in continual operation" until the obligation is fully satisfied.  *Anthony*, 316 F.3d at 420.  Further, "New Jersey has an overriding interest in ordering, monitoring, enforcing and modifying child support obligations" as "[t]he Probation Division and the New Jersey courts are conferred with authority to ensure that payments are made and to remedy any failures to pay."  *Id.* at 420, 421; N.J. Ct. R. 5:7-5.  Plaintiff can also raise - and appears to have raised in his most recent filing for emergent relief (ECF No. 26) - his constitutional claims in state court given that all "child support matters are heard in the Superior Court of New Jersey, Chancery Division, Family Part."  *Id.* at 422 (citing N.J. Ct. R. 5:1-1).

Second, Plaintiff's Complaint challenges, in large part, his probation. (*See generally* Compl.) Plaintiff's probation constitutes an ongoing proceeding as a result of Plaintiff's sentence for violating the state court's FROs. *See Miller v. Ayres*, Civ. No. 09-0056, 2009 WL 1230877, at *4 (W.D. Pa. May 4, 2009) (explaining that "the criminal proceeding remains ongoing as the Plaintiff's criminal sentences included a term of probation."). Moreover, New Jersey has an overriding interest in establishing terms of probation and enforcing FROs issued under the PDVA because the PDVA is intended "to assure the victims of domestic violence the maximum protection from abuse the law can provide." *See* N.J. Stat. Ann. § 2C:25-18. And because the Superior Court of New Jersey, Chancery Division, Family Part has exclusive jurisdiction over all actions arising out of a family-type relationship, Plaintiff can raise his claims before the state court. N.J. Ct. R. 5:102. Finally, to the extent Plaintiff disagrees with the orders imposed against him in state court, the New Jersey Court Rules provides a mechanism to submit an appeal to the New Jersey Appellate Division as a right. *See* N.J. Ct. R. 2:2-3.

In sum, even if this Court were to have jurisdiction over Plaintiff's claims, the Court finds it would be obligated to abstain under *Younger*.

## C.   DENYING FURTHER LEAVE TO AMEND

District courts dismissing complaints under § 1915 are required to provide plaintiffs with an opportunity to amend their complaint to cure their deficiencies unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002). Based on the foregoing, the Court finds that further amendment to the Complaint would be futile. The Court sets forth additional reasons below.

Section 1983 provides, in relevant part, that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects,

10

> or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, to state a claim for relief under § 1983, a plaintiff must establish: (1) a violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed or caused by a "person" acting under color of state law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Morrow v. Balaski*, 719 F.3d 160, 166–67 (3d Cir. 2013).  A person acts under color of state law when the individual is "clothed" with the authority of state law.  *Barna v. City of Perth Amboy*, 42 F.3d 809, 815–16 (3d Cir. 1994).

First, Plaintiff's § 1983 claims against Ben-Ishay fail because she is not a person acting under authority of state law.  *See, e.g.*, *Humphrey v. Pennsylvania Ct. of Common Pleas of Philadelphia*, 462 F. Supp. 3d 532, 536 (E.D. Pa. 2020) (dismissing § 1983 claim against the mother of the plaintiff's children because she was not a state actor).

Second, Plaintiff's claims against the Judges, the Court Clerk and the Probation Officers, in their official capacity, as well as the New Jersey Superior Court, Ocean County for monetary relief are barred under the Eleventh Amendment.[5]  These Defendants are not "persons" amenable

---

[5] In addition to monetary relief, Plaintiff seeks declaratory and injunctive relief against the Court Clerk, the Judges, and the Probation Officers vis-à-vis his pursuit to achieve expungement of his criminal and probation records and the immediate termination of his civil enforcement action.  Where a plaintiff seeks prospective declaratory or injunctive relief from individual state officers to end ongoing violations of federal law, an exception to the Eleventh Amendment may lie.  *See Ex parte Young*, 209 U.S. 123 (1908).  The *Ex parte Young* doctrine is narrow in scope - the inquiry focuses on whether the complaint: (1) alleges an ongoing violation of federal law; and (2) seeks prospective relief. *Del. River Joint Toll Bridge Comm'n v. Sec'y Pa. Dep't of Lab. & Indus.*, 985 F.3d 189, 193–94 (3d Cir. 2021) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  Here, Plaintiff claims that these Defendants: (1) signed, entered, or enforced temporary or permanent restraining orders emanating from Ben-Ishay's abuse of process; (2) "failed to provide clear notice of the consequences of [his] restraining orders"; (3) "misrepresented court hearing purposes, obstructed access to records, and fabricated scheduling notices"; (4) "retaliated against [Plaintiff] for requesting court documents and questioning court procedures"; (5) "obstructed" Plaintiff's access to the courts; and (6) "treated [Plaintiff] unequally" and "targeted" him by coordinating child support and family court hearings "ex parte"; (6) imposed punishments based on a trial that violated due process; and (7) incarcerated and sentenced Plaintiff based upon violations of restraining orders that were based upon false claims or amended without notice. (*See generally* Compl. & ECF Nos. 1-1, 1-2.)  As Plaintiff frames these allegations in the

to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989) ("States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" are not "persons" under section 1983); *Dongon v. Banar*, 363 F. App'x 153, 156 (3d Cir. 2010) ("[S]tate courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the state of New Jersey, and therefore considered 'arms' of the state."); *Johnson v. State of New Jersey*, 869 F. Supp. 289, 296 (D.N.J. 1994) (holding that the Superior Court of New Jersey is entitled to Eleventh Amendment immunity); *Futterknecht v. Thurber*, Civ. No. 14-7395, 2015 WL 4603010, at *7 (D.N.J. July 30, 2015) (holding New Jersey Superior Court, Bergen County, and Bergen County Probation Division immune from suit under the Eleventh Amendment); *Clark v. Conahan*, 737 F. Supp. 2d 239, 258 (M.D. Pa. 2010) ("The probation department is an arm of the state, and its employees are state actors, making them subject to sovereign immunity.").

Third, Plaintiff's claims against the Judges, the Court Clerk, and Probation Officers, in their individual capacity, are barred under the doctrine of absolute judicial and quasi-judicial immunity. Such immunity "is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000). The immunity does not extend to: (1) "nonjudicial acts, *i.e.*, actions not taken in the judge's judicial capacity"; or (2) judicial actions "taken in the complete absence of all jurisdiction." *Id.* (quoting *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991)). Here, Plaintiff's Complaint does not allege that the Judges, the Court Clerk, or

---

past tense, he has not pled an ongoing violation of federal law and, as already discussed, the prospective relief Plaintiff seeks implicates the *Rooker-Feldman* doctrine. *See Mosley v. State of New Jersey*, Civ. No. 12-18885, 2022 WL 3913739, at *6 (D.N.J. Aug. 31, 2022) (suggesting *Rooker-Feldman* precluded the Court from granting plaintiff's request to expunge his arrest, violation of probation, and sentence). Accordingly, the *Ex parte Young* exception to the Eleventh Amendment is inapplicable to the present matter.

12

Probation Officers acted outside of the scope of their judicial duties by entering and enforcing court orders or conducting court proceedings. Nor does Plaintiff plead that these offices acted in the absence of complete jurisdiction since the New Jersey Superior Court, Chancery Division, Family Part has exclusive and continuous jurisdiction over all actions arising out of a family-type relationship. N.J. Ct. R. 5:102.

Fourth, Plaintiff's § 1983 claims against the Child Support Agents, the Managers, Assistant Prosecutor Moscato[6], and Detective Shadiak are deficient because the Complaint does not contain any factual allegations made against them. *See Natale v. Camden Cnty. Corr. Facility*, 318 F. 3d 575, 583–84 (3d Cir. 2003). "[A] defendant in a civil rights action must have personal involvement in the alleged wrongs . . . ." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[A] civil rights complaint is adequate where it states the conduct, time, place, and persons responsible."). Without such allegations, the Complaint violates Rule 8 of the Federal Rules of Civil Procedure because it does not contain a short and plain statement clearly alleging which of these defendants were responsible for which alleged wrongs, as required to provide them fair notice of the claims brought against them. *See* Fed. R. Civ. P. 8; *Twombly*, 550 U.S. at 555.[7]

For these many reasons, the Court finds that further leave to amend would be futile. It will therefore deny leave to amend.

---

[6] Even if Plaintiff had alleged facts against Assistant Prosecutor Moscato, he or she would be entitled to absolute prosecutorial immunity for conduct within the scope of his or her duties as a prosecutor. *See Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976) (noting that a prosecutor is immune for all acts that are "intimately associated with the judicial process.").

[7] This dismissal also applies to the "Ocean County Jail System" to the extent it is named as a separate defendant in this action. (*See* Compl. at 3.) An Eighth Amendment conditions of confinement claim requires a plaintiff to allege two elements: (1) that the plaintiff experienced an objectively serious deprivation of humane conditions of confinement; and (2) the prison or its officials acted with deliberate indifference - that is, they acted with subjective knowledge of a substantial risk of serious harm and disregarded that risk. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). No such allegations are pled here.

13

### D.    PLAINTIFF'S REMAINING MOTIONS

Having determined that Plaintiff's Complaint must be dismissed, Plaintiff's Motion for Federal Protection (ECF No. 8) and Emergency Motion for Federal Intervention (ECF No. 26) will be DENIED AS MOOT.

### IV.    **CONCLUSION**

For the reasons stated above, the Court will GRANT Plaintiff's IFP Application.  It will also DISMISS Plaintiff's Complaint WITHOUT PREJUDICE and without further leave to amend.  Accordingly, the Clerk's Office will be instructed to mark this matter CLOSED.  An appropriate Order will follow.

Date: June 30, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

14